# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHIVA STEIN, | : |
| Plaintiff, | : Civil Action No. _____ |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| GAIN CAPITAL HOLDINGS, INC., JOSEPH A. SCHENK, GLENN H. STEVENS, TOM BEVILACQUA, CHRISTOPHER W. CALHOUN, ALEX GOOR, DOUG RHOTEN, CHRISTOPHER S. SUGDEN, AND PETER QUICK, | : **SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| | : **JURY TRIAL DEMANDED** |
| Defendants. | : |

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Gain Capital, Inc. ("Gain Capital or the "Company") and the members Gain Capital board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Gain Capital by INTL FCStone Inc. ("INTL") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on April 10, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Golf Merger Sub I Inc. ("Merger Sub"), a wholly owned subsidiary of INTL, will merge with and into Gain Capital with Gain Capital surviving the merger and becoming a wholly owned subsidiary of INTL (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Gain Capital common share issued and outstanding will be converted into the right to receive $6.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Gain Capital stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, GCA Advisors, LLC ("GCA") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Gain Capital stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Gain Capital is headquartered in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of Gain Capital common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Joseph A. Schenk has served as a member of the Board since April 2008 and Chairman of the Board since October 2017.

11. Individual Defendant Glenn H. Stevens has served as a member of the Board since June 2007 and is the Company's President and Chief Executive Officer.

12. Individual Defendant Tom Bevilacqua has served as a member of the Board since 2011.

13. Individual Defendant Christopher W. Calhoun has served as a member of the Board since October 2010.

14. Individual Defendant Alex Goor has served as a member of the Board since 2017.

15. Individual Defendant Doug Rhoten has served as a member of the Board since October 2019.

16. Individual Defendant Christopher S. Sugden has served as a member of the Board since April 2006.

17. Individual Defendant Peter Quick has served as a member of the Board since December 2006.

18. Defendant Gain Capital is incorporated in Delaware and maintains its principal offices at Bedminster One, 135 Route 202/206, Bedminster, New Jersey 07921. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "GCAP."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

21. GAIN Capital Holdings, Inc., together with its subsidiary, provides trading services and solutions to retail, institutional, and futures service customers worldwide. The company operates in two segments, Retail and Futures. It specializes in over-the-counter (OTC) and exchange-traded markets. The company offers access to a range of financial products, including spot foreign exchange (forex) and precious metals trading; and spread bets and contracts for differences on currencies, commodities, indices, individual equities, bonds, options, and interest rate products, as well as OTC options on forex. It provides services to retail customers through FOREX.com and Cityindex.com, as well as through brokers and white label partners. The company offers execution and risk management services for exchange-traded

futures and futures options on the United States and European futures and options exchanges; and online trading services. GAIN Capital Holdings, Inc. was founded in 1999 and is headquartered in Bedminster, New Jersey.

22. On February 27, 2020, Gain Capital announced that they had entered into a proposed transaction:

> BEDMINSTER, N.J., Feb. 27, 2020 /PRNewswire/ -- GAIN Capital Holdings, Inc. (NYSE: GCAP) ("GAIN" or the "Company") today announced it has entered into a definitive agreement to be acquired by INTL FCStone Inc. (NASDAQ: INTL) ("INTL FCStone").  Under the terms of the agreement, INTL FCStone will acquire the Company in an all-cash transaction. The Company's stockholders will receive $6.00 per share, representing approximately $236 million in equity value.
>
> "GAIN's business fits naturally within INTL FCStone's diversified and scaled franchise, and our shareholders will benefit from this combination by receiving a substantial premium in an all-cash transaction. GAIN was founded over 20 years ago with the intention of providing traders with low-cost access to foreign exchange markets. By joining INTL, we see an incredible opportunity to leverage their capabilities and ecosystem of products, and to deliver an even more comprehensive offering to our customers. Bringing together GAIN's expertise in serving the retail customer and INTL's unparalleled access to the financial markets creates an exciting value proposition and enables the combined group to serve a wider range of customers," commented Glenn Stevens, Chief Executive Officer of GAIN Capital Holdings, Inc.
>
> "After a thorough evaluation of the options available, the Board of Directors is confident that this transaction will provide a significant opportunity for our stockholders to realize value for their shares while providing the best path forward for GAIN's business, employees and customers," said Mr. Stevens.
>
> The transaction represents a 70 percent premium to the closing share price of the Company's shares on February 26, 2020 and a 60 percent premium to the volume-weighted average price of the Company's stock in the 30 trading days ending on February 26, 2020.

> The transaction is the result of a comprehensive strategic alternatives review process taken by the Company's Board of Directors. The transaction has been approved by GAIN's Board of Directors. In addition, VantagePoint Capital Partners, Michael Spencer's private investment group IPGL and Glenn Stevens, representing in aggregate approximately 44% of GAIN's stockholders, have entered into agreements to vote in favor of the transaction. The transaction is expected to be completed in mid-2020, subject to regulatory approvals and other customary closing conditions.
>
> Sean O'Connor, CEO of INTL FCStone, commented on the transaction, "As a result of this combination, GAIN's customers will benefit from a richer product offering as well as the expanded resources and greater scale of the combined firm. INTL FCStone, in turn, will add a new digital platform to its global financial network, significantly expanding its offering to retail clients, as well as a complementary futures business."
>
> GCA Advisors LLC acted as exclusive financial advisor and Davis Polk & Wardwell LLP acted as legal advisor to GAIN. Jefferies LLC acted as financial advisor and DLA Piper acted as legal advisor to INTL FCStone.

23. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Gain Capital's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

### B.   The Materially Incomplete and Misleading Proxy Statement

24. On April 10, 2020, Gain Capital filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's

6

stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Gain Capital Financial Projections*

25.     The Proxy Statement fails to provide material information concerning financial projections by Gain Capital management and relied upon by GCA in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Gain Capital management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their

corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning GCA's Financial Analysis*

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

30. With respect to GCA's *Selected Public Company Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by GCA in the analysis.

31. With respect to GCA's *Selected Transactions Analysis* for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by GCA in the analysis.

32. With respect to GCA's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the use of terminal growth rates of (1.0%) to 1.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 12.9% to 14.9%, (iv) the inputs and assumptions underlying the use of the discount rates of 12.9% to 14.9%.

33. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by GCA and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to

notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

39. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of Gain Capital within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Gain Capital, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Gain Capital, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Gain Capital, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

44. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons,

these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

13

Dated: April 13, 2020 **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

*Attorneys for Plaintiff*

14